- IC

FILED

JUN 04 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDALYN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-03293 |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | Judge: Matthew F. Kennelly |
| MIDLAND FUNDING, LLC, | ) | |
| ENCORE CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF BRENDALYN KING'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY NOTE:** Defendants' Memorandum (Dkt. 58) is 16 pages one page in excess of the 15-page limit under Local Rule 7.1 filed without leave of Court. Plaintiff respectfully requests equivalent latitude for this Opposition.

## PRELIMINARY STATEMENT

Plaintiff Brendalyn King, proceeding pro se, respectfully submits this Opposition to Defendants' Motion for Summary Judgment. Defendants Midland Credit Management, Inc. ("MCM"), Midland Funding, LLC ("MF"), and Encore Capital Group, Inc. ("Encore") seek summary judgment by misrepresenting the factual record, ignoring their own evidence, and asking this Court to reward a pattern of discovery misconduct that prevented Plaintiff from fully developing her case. Defendants' Motion should be denied in its entirety.

Four material misrepresentations in Defendants' Motion require immediate correction. First, Defendants falsely represent that Plaintiff produced no call records in discovery, when their own DSMF paragraphs 34-35 acknowledge the call log was attached to Plaintiff's Motion to Compel and Defendants' own attorney showed Plaintiff the call log as Deposition Exhibit 6 at her deposition. (Dep. 50:18-22.) Second, Defendants represent MCM called Plaintiff 23 times from April 1 to June 6, 2024, when their own Exhibit 3-4 shows calls beginning April 2022 a two-year call history concealed from this Court. Third, Defendants completely ignore Regulation F's conversation cooldown rule Prong 2 of 12 C.F.R. § 1006.14(b)(2) where Plaintiff's records document at least nine presumptive violations. Fourth, Defendants' own Exhibit A to the Bill of Sale does not identify Plaintiff's account by name or account number confirming defense counsel's own admission in open court that Plaintiff's account was 'bundled up in a pool of other debts and packaged all together.'

## STATEMENT OF RELEVANT FACTS

### A. The Actual Corporate Structure of the Three Defendants

Defendants seek to dismiss MF and Encore by portraying them as distant corporate relatives. The actual documented corporate structure tells a fundamentally different story one that Plaintiff correctly described at her deposition.

Encore Capital Group, Inc. is the publicly traded ultimate parent and controlling entity of the entire enterprise (NASDAQ: ECPG). According to the CFPB, Encore and its subsidiaries together comprise the largest debt collector and debt buyer in the United States, with annual revenue exceeding $1billion. Encore actively directs the enterprise's debt purchasing and

collection strategy and has been named as a co-defendant with its subsidiaries in two separate CFPB federal enforcement actions.

Midland Funding, LLC is the entity that legally owns the debt portfolios including Plaintiff's alleged account. MF is the actual purchaser and title holder of charged-off consumer accounts. When the Bill of Sale at the center of this case transferred Plaintiff's alleged account, it transferred the account to MCM on behalf of MF as the legal owner. MF's name commonly appears on consumers' credit reports while MCM makes the collection calls because MF is the legal owner and MCM is the servicer. Every act of collection by MCM was performed on behalf of and for the benefit of MF as the legal owner of the account.

Midland Credit Management, Inc. is the servicer and collection arm of the enterprise. MCM made the calls to Plaintiff, reported the debt to credit bureaus on behalf of MF, and received and ignored Plaintiff's Debt Validation Letter.

Plaintiff accurately described this structure at her deposition: 'Encore is the parent group. Midland Funding funds the project and Midland Credit goes after the collections.' (Dep. 67:22-68:2.) And: 'Midland Funding funds the money to purchase the debts. Midland Credit goes after them.' (Dep. 69:20-22.) These statements are factually accurate descriptions of how these three entities operate. What Plaintiff an unrepresented 75-year-old stroke survivor on her first deposition without counsel could not articulate in legal terms is the legal significance of that structure, which this Opposition now provides.

**B. MCM's Decade-Long Pattern of Documented FDCPA and FCRA Violations**

In September 2015, the CFPB entered a Consent Order against Encore, Midland Funding, and MCM, based on findings that these companies violated the CFPA, FDCPA, and FCRA the same statutes at issue here. In September 2020, the CFPB sued these same entities again for

violating the 2015 Consent Order, specifically finding they sued consumers without possessing required documentation and failed to provide consumers with required loan documentation after they requested it precisely what Plaintiff experienced. In October 2020, Defendants settled by paying $79,308.81 in consumer redress and a $15 million civil money penalty. Any violations in this case were willful, not inadvertent.

**C. The Extended Call History Defendants Concealed From This Court**

MCM's own call log, produced as Exhibit 3-4 to the Sandra Ross Declaration, shows calls to Plaintiff's account beginning April 27, 2022 not April 1, 2024 as Defendants represent in their MSJ. The log spans 2022, 2023, and into 2024, showing calls in virtually every month during that period. Under the TCPA's four-year statute of limitations, 28 U.S.C. § 1658, calls dating back to March 2021 are potentially actionable. Defendants' selective presentation of only the April-June 2024 call period to this Court misrepresents the full scope and duration of their calling conduct.

**D. The Bill of Sale Does Not Establish Ownership of Plaintiff's Specific Account**

The Bill of Sale (Ex. 3-1) is titled '2Q2021 Citi Retail Services Do Not Call Bulk' and is expressly stated to be 'subject to the terms and conditions of the Master Purchase and Sale Agreement dated April 30, 2021' the MPA Plaintiff sought in discovery and was denied. Exhibit A to the Bill of Sale identifies the transferred accounts only as a bulk lot 'Citi Retail Services DNC Bulk June 2021 (Macy's)' with the number of accounts, sale balance, and purchase price entirely redacted. Plaintiff's name does not appear. Plaintiff's account number does not appear. Defense counsel acknowledged in open court on April 10, 2026 that Plaintiff's account was 'bundled up in a pool of other debts and packaged all together.' As the Eleventh Circuit held in Hinkle v. Midland Credit Management, Inc., 827 F.3d 1295, 1302 (11th Cir. 2016) involving these same three

Defendants a debt buyer relying solely on electronic data without account-level documentation may act unreasonably when verifying disputed accounts. Plaintiff challenged this gap directly at her deposition: 'You have not provided me with the master agreement, with the bill of sale. I don't see anything on there with my name.' (Dep. 59:4-8.)

The Affidavit of Sale of Account signed by Lindy Cain of Department Stores National Bank on July 6, 2021 confirms the sale involved 'a pool of charged-off accounts' and that 'certain electronic records were transferred on individual accounts' meaning Defendants received only electronic data, not original signed account documentation.

**E. The Sandra Ross Declaration Has Significant Evidentiary Issues**

Sandra Ross identifies herself as 'Manager, Process Excellence' for MCM a process improvement role, not a traditional records custodian. Her foundation for authenticating account transfer records and call logs as a qualified custodian under Fed. R. Evid. 803(6) is questionable given her title. More significantly, the execution date of the Sandra Ross Declaration was physically altered the word 'April' is crossed out and replaced with 'MAY' changing the execution date from April 5 to May 5, 2026. If Sandra Ross originally signed her declaration in April, MCM's stated reason for needing an extension that their client had not yet approved the MSJ is undermined. Plaintiff was denied the opportunity to depose Sandra Ross or any MCM witness. Every factual claim in Defendants' DSMF citing 'Ex. 3' rests exclusively on the testimony of this undeposed, interested MCM employee whose declaration bears an altered execution date.

**F. Plaintiff's Pre-Lawsuit Written Communications and MCM's Non-Response**

On November 21, 2024, Plaintiff sent MCM a Notice of Intent to Sue (Dep. Ex. 5, MCM 5) citing FDCPA, ICAA, and TCPA violations, documenting that MCM called the day after she

verbally told their collector to stop calling on May 2, 2024, that the calls caused 'mental anguish, and elevated blood pressure,' and demanding cessation of telephone communications. This constituted a written cease communication demand under 15 U.S.C. § 1692c(c) and a formal written debt dispute not merely a payment refusal as Defendants characterize it in their DSMF.

On March 21, 2025, Plaintiff sent MCM a formal Debt Validation Letter and Cease and Desist demand via USPS Certified Mail. MCM received this letter on March 28, 2025 confirmed by MCM's own internal processing stamp 'MCM 3' on the certified mail envelope produced in discovery. MCM never responded to the debt validation demand. No response exists anywhere in the discovery record.

**G. The Fundamentally Imbalanced Discovery Process and False Settlement Statement**

Plaintiff was deposed March 30, 2026 one day before the March 31, 2026 fact discovery deadline without counsel, at Defendants' attorneys' offices, on her first-ever deposition, without having obtained the MPA or other critical documents she had sought through discovery. The Motion to Compel was not heard until April 10, 2026 eleven days after her deposition. Plaintiff never had the opportunity to depose any MCM witness.

Defendants obtained their MSJ filing extension through a motion (Dkt. 51, filed April 28, 2026) containing a material misrepresentation. Defendants stated: 'After this hearing, the defendants made settlement overtures to Plaintiff, but they were not successful.' This representation is false. Plaintiff received no settlement overtures at any time after the April 10 hearing or at any other time. Plaintiff formally documented this false statement in her Motion for Reconsideration (Dkt. 55) and Memorandum (Dkt. 53), filed May 1, 2026, and requested Rule 11 sanctions.

## LEGAL STANDARD

Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). The Court must 'view the facts and draw reasonable inferences in the light most favorable to' the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). A genuine dispute exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Courts must liberally construe pro se filings and hold them to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007). This principle applies with full force at the summary judgment stage.

## ARGUMENT

### I. SUMMARY JUDGMENT IS PREMATURE UNDER FED. R. CIV. P. 56(d)

Under Fed. R. Civ. P. 56(d), when a nonmovant cannot present facts essential to justify her opposition because discovery was inadequate, the Court may deny or defer the motion. Plaintiff was denied the Master Purchase Agreement the only document that could identify her specific account within the bulk portfolio. She was deposed the day before discovery closed without that document. The Motion to Compel was heard eleven days after her deposition. She never deposed Sandra Ross or any MCM witness.

Defendants cannot withhold the MPA throughout discovery and then rely on a Bill of Sale that expressly references and incorporates the MPA to establish ownership at summary judgment. As the Eleventh Circuit held in Hinkle v. Midland Credit Management, Inc., 827 F.3d 1295, 1307

(11th Cir. 2016), involving these same Defendants, a debt buyer relying solely on electronic data without account-level documentation may act unreasonably when verifying disputed accounts — and Midland's own purchase agreements contemplate the need for account-level documentation to respond to consumer disputes. Plaintiff challenged this gap precisely: 'You have not provided me with the master agreement, with the bill of sale. I don't see anything on there with my name.' (Dep. 59:4-8.)

## II. DEFENDANTS' OWN EVIDENCE DISPROVES THEIR MSJ REPRESENTATIONS

Defendants told this Court MCM called Plaintiff 23 times from April 1 to June 6, 2024. Their own Exhibit 3-4 shows calls beginning April 27, 2022. Additionally, Defendants represent in their Memorandum that Plaintiff produced no call records, while simultaneously acknowledging in DSMF paragraphs 34-35 that Plaintiff confirmed her documentation was the call log attached to her Motion to Compel. This internal contradiction between what Defendants acknowledge in their DSMF and what they represent in their Memorandum is a material misrepresentation that this Court should not credit at summary judgment.

## III. DEFENDANTS COMPLETELY IGNORE REGULATION F'S CONVERSATION COOLDOWN RULE NINE DOCUMENTED VIOLATIONS

Defendants argue MCM did not violate Regulation F because it did not call more than seven times in a seven-day period, addressing only Prong 1 of 12 C.F.R. § 1006.14(b)(2). They completely ignore Prong 2 the telephone conversation cooldown rule which independently provides that a debt collector is presumed to violate the rule if it calls a consumer within seven consecutive calendar days after having had a telephone conversation with that consumer. Under

the CFPB's official commentary to 12 C.F.R. § 1006.14(b)(2)(i)(B), the date of the conversation is the first day of the seven-consecutive-day period.

Plaintiff's call log and deposition testimony establish at minimum nine presumptive Prong 2 violations: seven calls within seven days of the May 2, 2024 conversation with collector Mark Burgess (Dep. 24:7-9); and three calls within seven days of the May 13, 2024 conversation with collector Detra Martin (Dep. 41:13-15). Defendants never address Prong 2 anywhere in their 16-page Memorandum. A party cannot obtain summary judgment by arguing only half the applicable legal standard.

## IV. MCM VIOLATED 15 U.S.C. § 1692g BY FAILING TO RESPOND TO PLAINTIFF'S DEBT VALIDATION LETTER

The undisputed facts establish a clean Section 1692g violation. Plaintiff sent a written DVL on March 21, 2025. MCM received it March 28, 2025 proven by MCM's own internal stamp 'MCM 3' on the certified mail envelope produced in discovery. MCM never responded. Under 15 U.S.C. § 1692g(b), a debt collector must cease all collection activity upon receipt of a written validation request until providing adequate verification of the debt. Collection activity includes credit reporting. MCM's continued credit reporting after March 28, 2025, without validating the debt, violates Section 1692g(b) on its face. This violation is established entirely by Defendants' own produced documents. There is no genuine dispute of material fact.

Notably, the CFPB's 2020 enforcement action against these same Defendants specifically found they failed to provide consumers with required loan documentation after consumers requested it confirming this is a knowing, documented pattern of conduct, not an isolated oversight.

## V. MCM VIOLATED 15 U.S.C. § 1692e(8) BY REPORTING A DISPUTED DEBT WITHOUT NOTING THE DISPUTE

Section 1692e(8) of the FDCPA prohibits a debt collector from communicating credit information it 'knows or should know to be false, including the failure to communicate that a disputed debt is disputed.' The Seventh Circuit issued binding authority on this provision in two directly applicable decisions.

In Wood v. Security Credit Services, LLC, No. 23-2250 (7th Cir. Jan. 28, 2025), the Seventh Circuit reversed summary judgment in a case where the defendant debt collector bought a bundle of accounts without dispute history attached to individual accounts and then categorized all purchased debts as undisputed  precisely what MCM did in this case. The Seventh Circuit held that Section 1692e(8) creates a negligence standard requiring debt collectors to exercise reasonable care to avoid reporting false information. In Evans v. Portfolio Recovery Associates, LLC, 889 F.3d 337 (7th Cir. 2018), the Seventh Circuit affirmed summary judgment for plaintiffs, holding that a debt collector violated Section 1692e(8) by reporting debts to credit reporting agencies without stating that the debts were disputed.

MCM received Plaintiff's written dispute on November 21, 2024 (MCM 5) and again on March 28, 2025 (MCM 3). MCM knew or should have known the debt was disputed. Under Wood and Evans binding Seventh Circuit authority MCM's continued reporting without noting the dispute status constitutes an independent FDCPA Section 1692e(8) violation.

## VI. MCM VIOLATED 15 U.S.C. § 1692c(c) BY CONTINUING COLLECTION ACTIVITY AFTER WRITTEN CEASE DEMANDS

Plaintiff sent MCM two written cease communication demands November 21, 2024 (MCM 5) and March 21, 2025 (MCM 3) both produced by MCM in discovery with their own internal

stamps confirming receipt. Under Section 1692c(c), after receiving a written cease demand, a debt collector may only contact the consumer for three limited purposes none of which include continuing to report the debt to credit bureaus. MCM's continued adverse credit reporting after both demands constitutes ongoing Section 1692c(c) violations that Defendants' MSJ never addresses.

## VII. PLAINTIFF HAS ESTABLISHED CONCRETE INJURY SUFFICIENT FOR ARTICLE III STANDING

Defendants argue Plaintiff lacks standing because her injuries are purely psychological. This argument fails on multiple grounds and misstates the applicable law.

First, for TCPA claims, the Seventh Circuit held in Gadelhak v. AT&T Services, Inc., 950 F.3d 458, 462-63 (7th Cir. 2020) cited approvingly by the Supreme Court in TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021) that receipt of unwanted automated messages causes a concrete injury analogous to the common law tort of intrusion upon seclusion. If five unwanted messages are a concrete injury under Gadelhak, 23 collection calls over two months plus a two-year call history shown by Defendants' own Exhibit 3-4 is unquestionably concrete.

Second, for willful FCRA violations, the Seventh Circuit has held joining the Eighth, Ninth, and Tenth Circuits that a consumer need not prove actual damages to recover statutory damages under 15 U.S.C. § 1681n(a)(1)(A) for willful noncompliance. Statutory damages of $100 to $1,000 per willful violation are available without proof of specific financial harm. MCM's continued credit reporting after receiving Plaintiff's explicit written objection while under CFPB consent orders specifically covering FCRA violations constitutes willful rather than negligent noncompliance.

Third, Plaintiff documented elevated blood pressure in her November 21, 2024, Notice of Intent to Sue a pre-lawsuit, contemporaneous written statement sent months before this litigation. The Seventh Circuit recognized in Pennell v. Global Trust Management, LLC, 990 F.3d 1041, 1045 (7th Cir. 2021) that physical manifestations go beyond mere psychological states.

Fourth, Plaintiff incurred $9.68 in certified mail costs documented on the envelope MCM produced in discovery a concrete financial injury. See TransUnion, 594 U.S. at 425.

Fifth, Plaintiff provided specific, vivid testimony about MCM's calls waking her infant grandson, preventing her from resting while caring for him, and causing her ongoing anxiety. (Dep. 48:13-49:1.) This is not abstract stress it is documented disruption to concrete daily activities and caregiving responsibilities.

Sixth, adverse credit reporting by MCM after Plaintiff's explicit written objection constitutes concrete reputational and financial harm, a paradigmatic injury recognized across all circuits.

Seventh, Plaintiff's claims already survived Defendants' Motion to Dismiss before this Court. (Dkt. No. 37, Nov. 28, 2025.) The factual record now before the Court strengthens, not weakens, the standing showing made at the pleading stage.

## VIII. CONSUMER DEBT IS ESTABLISHED BY DEFENDANTS' OWN DEPOSITION QUESTIONING

Defendants argue Plaintiff never established the account was consumer debt under the FDCPA. This argument is refuted by Manetti's own deposition questioning. On page 13 of the transcript: Q: 'Could you describe it for me?' A: 'A department store.' Q: 'Department store credit card; correct?' A: 'Yes.' (Dep. 13:8-11.) A Macy's department store retail credit card is quintessentially consumer debt an obligation arising from a transaction primarily for personal,

family, or household purposes. 15 U.S.C. § 1692a(5). In the Seventh Circuit, FDCPA claims are evaluated from the perspective of an unsophisticated consumer who possesses rudimentary knowledge about the financial world and reasonable intelligence. Taylor v. Cavalry Inv., LLC, 365 F.3d 572, 574 (7th Cir. 2004). MCM's own attorney elicited testimony establishing the consumer nature of this account. Defendants cannot now argue otherwise.

## IX. PLAINTIFF'S FDCPA HARASSMENT CLAIMS PRESENT GENUINE DISPUTES OF MATERIAL FACT

Whether calls are harassing under 15 U.S.C. § 1692d(5) is inherently a factual question not suitable for summary judgment. The FDCPA prohibits conduct the natural consequence of which is to harass, including causing a telephone to ring repeatedly with intent to annoy, abuse, or harass. 15 U.S.C. § 1692d(5). The factual record here includes: a two-year call campaign revealed by MCM's own Exhibit 3-4; multiple calls within days of conversations despite Plaintiff's verbal requests to stop; Plaintiff telling each collector she refused to pay the alleged debt; calls disrupting infant grandchild care; documented pre-lawsuit elevated blood pressure; and MCM's continuation of calls the very next day after Plaintiff's May 2, 2024 verbal refusal. MCM's decade-long pattern of documented FDCPA violations confirmed by two CFPB enforcement actions supports the inference that the calling conduct was knowing rather than inadvertent. A reasonable jury could readily find harassment under Section 1692d(5).

## X. THE FCRA PERMISSIBLE PURPOSE DEFENSE FAILS

MCM's permissible purpose defense fails on multiple independent grounds. First, MCM has not produced admissible evidence proving it owns Plaintiff's specific account. Exhibit A to the Bill of Sale contains only bulk lot identification with all financial data redacted and no individual

account identification. The only document that could prove specific account ownership was the Master Purchase Agreement never produced. Second, the Bill of Sale expressly incorporates the MPA, meaning MCM relies on an incomplete chain of documents to establish permissible purpose. Third, Plaintiff explicitly demanded MCM cease accessing her credit report on March 28, 2025. MCM never validated the debt and continued reporting. Under FCRA Section 1681s-2(b), a furnisher that receives notice of a dispute must conduct a reasonable reinvestigation. Frazier v. Dovenmuehle Mortgage, Inc., 72 F.4th 769 (7th Cir. 2023). MCM conducted no reinvestigation whatsoever and it never responded to Plaintiff's DVL at all.

## XI. THE TCPA AUTODIALER CLAIM PRESENTS GENUINE FACTUAL DISPUTES

MCM's denial of autodialer use rests solely on the unverified declaration of Sandra Ross an interested MCM employee with an altered execution date on her declaration, whom Plaintiff was never permitted to depose. Under Facebook, Inc. v. Duguid, 592 U.S. 395, 404 (2021), an autodialer must use a random or sequential number generator. However, MCM's self-serving denial is directly undermined by MCM's prior payment of a $15 million CFPB civil money penalty arising from its calling practices. Plaintiff's testimony of a call delay before hearing a collector is consistent with predictive dialer technology. (Dep. 67:8-12.) Plaintiff was denied technical discovery into MCM's calling systems. A self-serving, unverified declaration from an undeposed interested employee, contradicted by MCM's own regulatory history, does not establish the absence of a genuine dispute of material fact.

## XII. MIDLAND FUNDING AND ENCORE ARE PROPER DEFENDANTS THEIR CORPORATE ROLES ESTABLISH DIRECT INVOLVEMENT

Defendants seek dismissal of MF and Encore by arguing Plaintiff merely named them based on corporate relationship. This argument fundamentally mischaracterizes the legal significance of that corporate relationship in the context of this specific case.

Midland Funding Is the Legal Owner of Plaintiff's Alleged Account Not a Passive Corporate Relative. MF is the entity that legally owns and holds title to the very account that is the subject of every claim in this lawsuit. When the Bill of Sale transferred Plaintiff's alleged account, it was transferred to MCM on behalf of MF as the legal owner and title holder. Consumers with MF-owned accounts like Plaintiff typically see MF's name appear on their credit reports precisely because MF is the legal owner. Every FDCPA violation, FCRA violation, and Regulation F violation committed by MCM was committed in the performance of MCM's role as servicer for MF as account owner. An owner of a debt portfolio who directs its servicer to collect on its behalf cannot claim complete insulation from liability for the servicer's unlawful collection practices on the owner's specific account.

The CFPB Treated All Three Entities as a Single Integrated Enterprise. In both the 2015 Consent Order and the 2020 enforcement action, the CFPB named Encore, Midland Funding, and MCM as co-defendants not just MCM alone. The federal government's own enforcement actions confirm these entities are not truly separate for purposes of consumer protection liability. Encore was a named defendant in the 2020 lawsuit not as a passive parent but as an active director of the enterprise's collection policies and practices.

Whether Midland Funding Is a Debt Collector Under the FDCPA Is a Genuine Dispute of Material Fact. Federal courts have held that Midland Funding's status as an FDCPA 'debt collector' defined under 15 U.S.C. § 1692a(6) as any entity whose principal business purpose is the collection of debts is a factual question that cannot be resolved at the summary judgment stage. See Warner

v. Midland Credit Management Inc. (finding genuine issue of material fact as to whether Midland Funding is a debt collector while granting summary judgment to Encore). Midland Funding whose entire business purpose is purchasing defaulted debts for collection through MCM fits squarely within the FDCPA's definition of debt collector.

Plaintiff Was Denied Discovery Into the Corporate Structure. Under Fed. R. Civ. P. 56(d), dismissal of MF and Encore is premature until Plaintiff has been afforded access to corporate governance documents, the Master Purchase Agreement, and the opportunity to depose witnesses about the actual direction and control relationships between these three entities. Plaintiff correctly described the functional corporate structure at her deposition Encore is the parent, MF purchases and owns the debt, MCM collects on it but was denied the discovery needed to translate that accurate description into the formal evidentiary record required at summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff Brendalyn King respectfully requests that this Court deny Defendants' Motion for Summary Judgment in its entirety. Defendants' own produced evidence a call log showing a two-year call history concealed from this Court; an Exhibit A to the Bill of Sale that does not identify Plaintiff's account; a Sandra Ross Declaration bearing an altered execution date; two letters produced by MCM with their own internal stamps confirming receipt of Plaintiff's written disputes; and a corporate structure confirming Midland Funding is the legal owner of the very account at issue creates genuine disputes of material fact on each of Plaintiff's claims.

In the alternative, pursuant to Fed. R. Civ. P. 56(d), Plaintiff requests that this Court defer ruling until Plaintiff has been afforded the opportunity to obtain the Master Purchase Agreement and its account schedules, native dialer system records, corporate governance documents, and to

depose Sandra Ross and at least one MCM representative regarding chain of title and calling equipment.

Respectfully submitted,

Brendalyn King, Plaintiff, Pro Se
22411 Butterfield Road, Apt. 103
Richton Park, IL 60471
fsboninety@yahoo.com

**CERTIFICATE OF SERVICE**

I, Brendalyn J. King, certify that on the date indicated below, I caused a copy of the foregoing Plaintiff's Opposition to Defendants' Motion for Summary Judgment to be served upon counsel for Defendants via the Court's electronic filing system and/or First Class U.S. Mail:

Louis J. Manetti, Jr.
louis.manetti@troutman.com
Nicholas D. O'Conner
Nicholas.oconnor@troutman.com
Troutman Pepper Locke LLP
111 South Wacker Drive
Chicago, IL 60606

Date: June 04, 2026

Brendalyn J. King, Plaintiff Pro Se