IC

FILED

JUN 04 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRENDALYN KING,
Plaintiff,
v.
MIDLAND CREDIT MANAGEMENT, INC.,
MIDLAND FUNDING, LLC,
ENCORE CAPITAL GROUP, INC.,
Defendants.

Case No. 1:25-cv-03293

Judge: Matthew F. Kennelly

**PLAINTIFF'S LOCAL RULE 56.1(b)(2) RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff Brendalyn King, proceeding pro se, respectfully submits this Response to Defendants' Rule 56.1(a)(2) Statement of Undisputed Material Facts ("DSMF") pursuant to Local Rule 56.1(b)(2) of the Northern District of Illinois. Plaintiff responds to each numbered paragraph as follows.

**PRELIMINARY NOTE REGARDING DEFENDANTS' EVIDENCE**

The majority of Defendants' factual claims including all claims regarding ownership (paragraphs 8-13), corporate structure (paragraphs 49-54), calling equipment (paragraph 58), and account information (paragraphs 14-17) rest exclusively on the Affidavit of Sandra Ross, described as a Manager at Midland Credit Management. (Ex. 3.) Sandra Ross is an MCM employee whose

affidavit was submitted without Plaintiff ever having the opportunity to depose her, cross-examine her, or challenge her credentials, methodology, or personal knowledge. Plaintiff was denied a discovery extension that would have permitted her to depose MCM witnesses. Additionally, the Sandra Ross Declaration bears a physically altered execution date the word 'April' is crossed out and replaced with 'MAY.' The Court should view facts supported solely by this declaration with appropriate skepticism.

## A. PARTIES, VENUE, AND JURISDICTION

**1. ADMITTED.** Plaintiff Brendalyn King is a resident of Illinois.

**2. ADMITTED.** Defendant MCM is a Kansas Corporation.

**3. ADMITTED.** Defendant Encore is a Delaware Corporation.

**4. ADMITTED.** Defendant Midland Funding is a Delaware Limited Liability Corporation.

**5. ADMITTED.** This Court has jurisdiction under 28 U.S.C. § 1331.

**6. ADMITTED.** This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

**7. ADMITTED.** Venue is proper because Plaintiff resides within the district.

## B. BRENDALYN KING'S CREDIT CARD ACCOUNT AND TRANSFER TO MCM

**8. DISPUTED.** Disputed to the extent this paragraph relies solely on the self-serving affidavit of Sandra Ross an MCM employee whom Plaintiff was never permitted to depose. Plaintiff does not dispute that a retail credit card associated with Macy's and National Department Stores Bank

existed. Plaintiff disputes MCM's characterization of that account as conclusively linked to her without production of original account-level documentation bearing her signature, which MCM has refused to produce throughout this litigation.

**9. DISPUTED.** Disputed. This paragraph asserts MCM purchased Plaintiff's specific account, citing solely the Sandra Ross affidavit and Exhibit 3-1 (the Bill of Sale). The Bill of Sale is a bulk portfolio transfer document referencing a Master Purchase Agreement as governing the terms and conditions of the sale. Defendants' own counsel acknowledged in open court on April 10, 2026 that Plaintiff's account was 'bundled up in a pool of other debts and packaged all together.' The Bill of Sale alone without the MPA and its account schedule identifying Plaintiff's specific account is insufficient to establish that Plaintiff's account was included in the transfer. As the Eleventh Circuit held in Hinkle v. Midland Credit Management, Inc., 827 F.3d 1295 (11th Cir. 2016) involving these same Defendants a debt buyer relying solely on electronic data files without account-level documentation may act unreasonably when verifying disputed accounts.

**10. DISPUTED.** Disputed in part. Plaintiff does not dispute the quoted language of the Bill of Sale. Plaintiff disputes the legal conclusion that this Bill of Sale establishes MCM's ownership of her specific account. The Bill of Sale references 'the Asset Schedule attached hereto as Exhibit A' a document showing only bulk lot identification with all financial data redacted and no individual account identification. Without the Asset Schedule identifying Plaintiff's account by name and account number, the Bill of Sale does not establish that Plaintiff's account was among those transferred.

**11. DISPUTED.** Disputed. This paragraph asserts as undisputed fact the very conclusion at issue that King's account was included in the accounts transferred to MCM. This assertion rests solely on the Sandra Ross affidavit without production of the MPA or account schedule that would

actually identify Plaintiff's account within the pool. Plaintiff specifically challenged this at her deposition: 'You have not provided me with the master agreement, with the bill of sale. I don't see anything on there with my name.' (Dep. 59:4-8.)

**12. DISPUTED.** Disputed. The assertion that MCM was 'transferred the card agreement' rests on the Sandra Ross affidavit. The card agreement produced (Ex. 3-3) is a generic printed form bearing no signature from Plaintiff. Plaintiff correctly questioned at her deposition: 'If I had an account with Macy's, wouldn't you have to have the document where I signed the application with Macy's?' (Dep. 61:14-16.) MCM has never produced a signed application bearing Plaintiff's signature.

**13. DISPUTED.** Disputed. The assertion that MCM was 'transferred the account information' rests solely on the Sandra Ross affidavit. The fact that MCM possesses electronic data matching Plaintiff's personal information does not establish that this data was lawfully transferred as part of a valid purchase of Plaintiff's specific account. As the Eleventh Circuit noted in Hinkle, involving these same Defendants, Midland received only 'a data file containing electronically stored information' which the court found potentially insufficient for verification purposes. 827 F.3d at 1302.

**14. ADMITTED.** Admitted that the account information MCM possesses lists Plaintiff's name. Plaintiff disputes the legal significance data matching her name does not establish lawful ownership of her account.

**15. DISPUTED.** Disputed. This paragraph cites the deposition exchange in which Defendants' counsel pressured Plaintiff a 75-year-old pro se litigant on her first deposition into providing her complete Social Security number on the record over her objection that counsel should already have

it. (Dep. 18:24-19:8.) That MCM's data matches a Social Security number does not establish lawful acquisition of Plaintiff's specific account.

**16. ADMITTED.** Admitted that account information lists Plaintiff's date of birth. Plaintiff disputes the legal significance.

**17. ADMITTED.** Admitted that account information lists an address associated with Plaintiff. Plaintiff disputes the legal significance.

## C. COMMUNICATIONS WITH BRENDALYN KING

**18. DISPUTED.** Disputed in part. Plaintiff does not dispute that MCM called a number ending in -1111 multiple times. Plaintiff disputes the legal conclusion that 'it did not call more than seven times in a seven-day period' as a complete statement of Regulation F compliance. This assertion addresses only Prong 1 of 12 C.F.R. § 1006.14(b)(2) while completely ignoring Prong 2 the conversation cooldown rule. Plaintiff's call log documents at least nine calls placed within seven consecutive calendar days after telephone conversations with Plaintiff on May 2, May 13, and May 21, 2024 all presumptive Regulation F Prong 2 violations that Defendants never address. Additionally, MCM's own Exhibit 3-4 shows calls beginning April 27, 2022 not April 1, 2024 as represented here.

**19. DISPUTED.** Disputed as materially incomplete and misleading. This paragraph characterizes the November 21, 2024 letter only as King 'disputing the account and refusing to pay.' The letter produced by MCM in discovery bearing their own internal stamp MCM 5, identified as Defendants' Exhibit 5 is titled 'NOTICE OF INTENT TO SUE' and specifically cites violations of

the FDCPA, ICAA, and TCPA. It constitutes: (1) a written cease communication demand under 15 U.S.C. § 1692c(c); (2) a formal written dispute of the debt; (3) pre-lawsuit documentation of physical injury including elevated blood pressure; and (4) formal legal notice of specific statutory violations. Characterizing this document as merely a refusal to pay misrepresents its legal significance to this Court.

**20. DISPUTED.** Disputed as misleading. While Plaintiff confirms this was her first written communication, this paragraph is used by Defendants in their Memorandum to argue no calls were made after a cease demand — which ignores that the November 21, 2024 letter itself was a written cease communication demand, and that MCM's continued credit reporting after both written demands constitutes ongoing collection activity in violation of § 1692c(c).

**21. DISPUTED.** Disputed as materially incomplete. This paragraph describes the March 21, 2025 DVL/C&D letter only as King 'requesting that they cease collection activities,' stripping out the most legally significant element — the formal Debt Validation demand under 15 U.S.C. § 1692g requiring MCM to verify the debt before continuing any collection activity. The letter also demanded verification of the debt amount, all chain of title assignments, original account-level documentation, and cessation of credit report access. MCM received this letter March 28, 2025 — confirmed by their own internal stamp 'MCM 3' — and never responded to any of these demands.

### D. KING'S DEPOSITION TESTIMONY ABOUT THE ACCOUNT

**22. DISPUTED.** Disputed as misleading. While Plaintiff testified she did not recall taking out a Macy's credit card specifically, when asked to describe the account she confirmed it was 'a department store' credit card — a 'department store credit card; correct? Yes.' (Dep. 13:8-11.) This

directly establishes the consumer nature of the debt under 15 U.S.C. § 1692a(5). The Seventh Circuit evaluates FDCPA claims from the perspective of an unsophisticated consumer with rudimentary financial knowledge. Taylor v. Cavalry Inv., LLC, 365 F.3d 572, 574 (7th Cir. 2004).

**23. ADMITTED.** Admitted that Plaintiff testified she had taken out retail credit cards in the past 15 years but could not recall specific stores. Combined with her confirmation that the account was a department store credit card (Dep. 13:8-11), this establishes the consumer nature of the debt.

**24. DISPUTED.** Disputed as incomplete and taken out of context. While Plaintiff acknowledged the account existed and was in her name, this acknowledgment was immediately followed by her challenge: 'Do you have proof it is in my name?' (Dep. 18:13.) Plaintiff consistently challenged MCM's ownership throughout the deposition, stating: 'You have not provided me with the master agreement, with the bill of sale. I don't see anything on there with my name.' (Dep. 59:4-8.) Her acknowledgment that an account existed is not an acknowledgment that MCM owns it or had the legal right to collect on it.

**25. ADMITTED.** Admitted that Plaintiff is not alleging identity theft.

**26. ADMITTED.** Admitted. Plaintiff disputed MCM's ownership because MCM has not provided sufficient proof specifically the Master Purchase Agreement and original signed account documentation.

**27. DISPUTED.** Disputed as misleading. When asked how MCM would have the card agreement if it did not own the account, Plaintiff responded: 'That's what I want to know.' (Dep. 62:17.) This is not a concession of MCM's ownership it is Plaintiff acknowledging she does not know how MCM obtained a generic form agreement, which is precisely why she sought the Master Purchase Agreement in discovery.

**28. DISPUTED.** Disputed for the same reasons as paragraph 27. Plaintiff's inability to explain how MCM obtained matching electronic data is not a concession of ownership. It is consistent with Plaintiff's position that MCM may have obtained this information through an inadequately documented bulk purchase that does not establish valid chain of title to her specific account.

**29. DISPUTED.** Disputed as incomplete and misleading. While Plaintiff testified the calls as a group were harassing, Defendants omit her specific testimony about the actual impact: 'Each and every one of these calls placed to my home caused me stress, anxiety and harassment. I have a grandson, a newborn... when I'm babysitting my grandson and I get these calls and even though it's a missed call, it's a phone that's ringing. Then it's waking my grandson up. Then it's disturbing me... I continued to get calls and calls and calls. It's very harassing.' (Dep. 48:13-49:1.)

**30. ADMITTED.** Admitted that Plaintiff stated 'It's not about one call. It's about all the calls.' This accurately reflects that the harassment arises from the pattern and volume of calls, particularly in light of the documented Regulation F Prong 2 violations.

**31. DISPUTED.** Disputed as incomplete. While Plaintiff testified the calls caused stress, this paragraph omits her detailed testimony about the physical impact elevated blood pressure documented in her pre-lawsuit Notice of Intent to Sue, disruption of infant grandchild care, inability to rest, and ongoing anxiety from calls she received repeatedly despite telling collectors to stop.

**32. DISPUTED.** Disputed as misleading. Plaintiff testified the individual calls were not deceptive in their content she did not claim the callers said false things during each call. However, Defendants conflate the absence of deceptive content with the absence of harassment. The FDCPA

prohibits harassment and deceptive practices as separate, independent violations. 15 U.S.C. §§ 1692d, 1692e. Plaintiff's harassment claims do not depend on the calls being deceptive in content.

**33. ADMITTED.** Admitted that Plaintiff testified the calls as a group were not deceptive in their content. Plaintiff's claims are based on harassment under § 1692d and the failure to report disputed debt under § 1692e(8), not deception under § 1692e generally.

**34. DISPUTED.** Disputed as directly contradicting Defendants' own Memorandum. This paragraph accurately states that Plaintiff confirmed her documentation was her call logs from her cell phone but Defendants' Memorandum simultaneously states Plaintiff 'did not produce any of her call records in discovery.' Defendants cannot acknowledge the call log's existence in their DSMF while denying it in their Memorandum. This internal contradiction is a material misrepresentation to this Court.

**35. DISPUTED.** Disputed as misleading for the same reasons as paragraph 34. This paragraph confirms that 'King clarified that her documentation for the calls is the specific call log that was attached to her motion to compel.' That call log is part of the official court docket. Defendants cannot simultaneously acknowledge in their DSMF that the call log exists and was attached to the Motion to Compel, while arguing in their Memorandum that Plaintiff produced no call records.

**36. DISPUTED.** Disputed as misleading and taken out of context. At deposition pages 54-57, Plaintiff was shown a document Manetti described as Exhibit 6 which appeared to be phone screenshots rather than her original handwritten log. Plaintiff became confused about whether this specific document was her original log or phone screenshots. She said she would need to go home and check her records to confirm. (Dep. 55:24-57:9.) This temporary confusion about the format of one specific exhibit shown to her without counsel during a deposition at opposing counsel's

offices on her first day of testifying does not constitute an admission that her call log was never produced.

**37. DISPUTED.** Disputed as misleading. Plaintiff stated she would confirm whether the specific document shown at the deposition was the same as what she had previously provided. This is not an acknowledgment that she failed to produce call records it is a statement that she would verify the format of a specific exhibit. Her call log was already attached to her Motion to Compel and is on this Court's docket.

**38. ADMITTED.** Admitted that Plaintiff testified the calls were harassing for the reasons stated. This testimony accurately reflects Plaintiff's position and supports her harassment claims under 15 U.S.C. § 1692d(5).

**39. ADMITTED.** Admitted that Plaintiff testified the calls were harassing because there was no reason for MCM to call her as she disputes owing the alleged debt. This testimony supports Plaintiff's harassment claims.

**40. DISPUTED.** Disputed as incomplete. While Plaintiff testified the calls were harassing partly because she was babysitting her infant grandson, Defendants use the word 'occasionally' to minimize testimony that Plaintiff described as occurring quite frequently 'I babysit him quite a lot.' (Dep. 49:10.) Plaintiff explained in detail how the calls woke the baby, disturbed her, required her to calm herself down, and continued despite her repeated requests to stop. (Dep. 48:13-49:1.)

**41. DISPUTED.** Disputed as misleading. While Plaintiff acknowledged she did not inform MCM she was caring for her grandson during specific calls, she correctly stated: 'I shouldn't have to.' (Dep. 49:13.) A consumer is under no obligation to explain her personal circumstances to a debt

collector as a prerequisite to the calls being deemed harassing. The FDCPA does not require a consumer to justify why unwanted, repeated collection calls are disruptive to her daily life.

## E. THE RELATIONSHIP BETWEEN MCM AND ENCORE AND MIDLAND FUNDING

**42. ADMITTED.** Admitted that Plaintiff did not have direct communications with Encore.

**43. DISPUTED.** Disputed as incomplete. While Plaintiff testified her claims against Encore were based on its corporate relationship with MCM as parent company, she also provided a substantive and factually accurate description of the relationship: 'Encore and Midland Funding, Midland — Encore is the parent group. Midland Funding funds the project and Midland Credit goes after the collections.' (Dep. 68:12-15.) This description accurately reflects the operational reality confirmed by publicly available records Encore is the publicly traded parent controlling the enterprise, MF purchases and holds legal title to debt portfolios, and MCM services and collects on those accounts.

**44. DISPUTED.** Disputed. Defendants selectively quote Plaintiff's answer to a leading and argumentative question comparing corporate parent liability to human parent-child relationships. Plaintiff's inability to rebut a legal analogy posed without counsel present does not establish that Encore lacks liability as the controlling parent of an integrated debt collection enterprise. The CFPB named Encore as a co-defendant in both its 2015 Consent Order and 2020 enforcement action treating Encore as a direct participant in the enterprise's unlawful conduct, not merely a passive parent.

**45. DISPUTED.** Disputed for the reasons stated in response to paragraph 43. Plaintiff accurately described the corporate structure at her deposition. She was denied discovery into corporate governance documents that would formally establish the control relationships. Dismissal of Encore is premature under Fed. R. Civ. P. 56(d).

**46. ADMITTED.** Admitted that Plaintiff did not have direct communications with Midland Funding.

**47. DISPUTED.** Disputed as incomplete. Plaintiff explained that Midland Funding funds the purchase of debt portfolios while MCM conducts collections accurately describing that MF is the legal owner and MCM is the servicer. Midland Funding is not merely a corporate relative it is the legal title holder of the very account at issue in this lawsuit. Every act of collection by MCM was performed on behalf of MF as the legal account owner.

**48. DISPUTED.** Disputed. Plaintiff's inability to answer whether Midland Funding 'has the ability to control MCM's actions' posed without counsel to a 75-year-old pro se litigant on her first deposition does not establish that no such control exists. This is a legal and factual question requiring corporate governance documents that Plaintiff was denied in discovery.

**49. DISPUTED.** Disputed. This assertion rests solely on the self-serving affidavit of Sandra Ross an MCM employee who makes assertions about corporate control between MCM and its parent entities. Plaintiff was denied the opportunity to depose Sandra Ross or obtain corporate governance documents. Whether Encore controls MCM's collection activities is a genuine dispute of material fact. Furthermore, the CFPB named Encore as a co-defendant in federal enforcement actions specifically because of Encore's direction of the enterprise's collection policies.

**50. DISPUTED.** Disputed for the same reasons as paragraph 49.

**51. DISPUTED.** Disputed for the same reasons as paragraph 49.

**52. DISPUTED.** Disputed for the same reasons as paragraph 49.

**53. DISPUTED.** Disputed for the same reasons as paragraph 49.

**54. DISPUTED.** Disputed for the same reasons as paragraph 49.

## F. KING'S TCPA CLAIMS

**55. ADMITTED.** Admitted that Plaintiff testified her belief that MCM used an autodialer was based on not hearing anyone immediately when she answered calls.

**56. ADMITTED.** Admitted that Plaintiff described the experience as a delay followed by hearing someone. This description is consistent with the operation of predictive dialer technology, which connects calls to agents only when an agent becomes available causing exactly the delay Plaintiff described.

**57. DISPUTED.** Disputed as misleading. While Plaintiff testified she did not have documents specifically supporting her TCPA claims, this must be understood in context: Plaintiff was denied the opportunity to conduct technical discovery into MCM's calling systems and was denied the ability to depose any MCM technical witness. Plaintiff could not obtain documents she was never given access to through discovery. Furthermore, MCM previously paid $15 million to settle a class action lawsuit specifically alleging it used autodialers for debt collection calls directly undermining MCM's self-serving denial in paragraph 58.

**58. DISPUTED.** Disputed. This assertion rests solely on the affidavit of Sandra Ross an interested MCM employee whose declaration bears an altered execution date and who was never subjected to cross-examination. No independent technical documentation, expert opinion, or equipment records support this claim. Plaintiff was denied the opportunity to depose Sandra Ross or any technical witness about MCM's calling equipment. A self-serving employee declaration, unverified by cross-examination, does not establish the absence of a genuine dispute of material fact. MCM's prior $15 million TCPA class action settlement regarding autodialer use in debt collection directly contradicts this assertion.

## G. KING'S CLAIM OF INJURY

**59. DISPUTED.** Disputed as incomplete. While Plaintiff described her injuries including nervousness and stress, Defendants omit that she also documented elevated blood pressure in her November 21, 2024 Notice of Intent to Sue a pre-lawsuit, contemporaneous written statement sent to MCM months before this litigation. The Seventh Circuit has recognized that physical manifestations go beyond mere psychological states. Pennell v. Global Trust Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021).

**60. DISPUTED.** Disputed as incomplete. This description of frustration and emotional upset omits the specific, concrete context Plaintiff provided, being repeatedly called while caring for an infant grandchild, having the calls wake the baby, being unable to rest and calm herself. (Dep. 48:13-49:1.)

**61. DISPUTED.** Disputed as incomplete. Distress from continued credit reporting of a disputed debt after Plaintiff explicitly demanded MCM cease accessing and reporting her credit constitutes concrete reputational and financial harm, not merely an emotional state. Credit report damage is a recognized concrete injury. Furthermore, under the Seventh Circuit, a consumer need not prove actual damages to recover statutory damages for willful FCRA violations. 15 U.S.C. § 1681n(a)(1)(A).

**62. DISPUTED.** Disputed as incomplete. Concern about damage to personal financial reputation from improper credit reporting reflects actual harm to creditworthiness, access to credit, and financial reputation cognizable injuries under both the FCRA and the FDCPA.

**63. DISPUTED.** Disputed as incomplete. Time and money spent responding to unlawful collection activity constitutes concrete injury. Specifically, Plaintiff spent $9.68 sending the March 21, 2025 DVL/C&D via certified mail a concrete out-of-pocket expense documented on the mailing envelope produced by MCM in discovery. Financial expenditure necessitated by a defendant's conduct is concrete injury under TransUnion LLC v. Ramirez, 594 U.S. 413 (2021).

**64. DISPUTED.** Disputed as legally insufficient basis for denying standing. The absence of medical treatment does not negate standing under all claims. The TCPA, FDCPA, and FCRA each create statutory rights whose violation constitutes injury independent of medical treatment. For TCPA claims, the Seventh Circuit held in Gadelhak v. AT&T Services, Inc., 950 F.3d 458 (7th Cir. 2020), that receipt of unwanted automated calls is itself a concrete injury. For willful FCRA violations, statutory damages are available without proof of actual damages. 15 U.S.C. § 1681n(a)(1)(A). Additionally, Plaintiff's pre-lawsuit documentation of elevated blood pressure in her November 21, 2024 letter represents a documented physical symptom that does not require medical treatment records to be cognizable.

**65. DISPUTED.** Disputed as incomplete. While Plaintiff confirmed the injuries listed in her interrogatory responses, she also described additional concrete harms throughout her deposition including the disruption to infant grandchild care, the $9.68 certified mail expenses, and the ongoing credit reporting damage that constitute injuries beyond those listed in the interrogatory response.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56.1(b)(3), Plaintiff states the following additional material facts that require denial of Defendants' Motion for Summary Judgment:

**Additional Fact 1 — MCM Never Responded to the Debt Validation Letter:** On March 21, 2025, Plaintiff sent MCM a formal Debt Validation and Cease and Desist letter via USPS Certified Mail (Tracking No. 9590940266711060986749). MCM received this letter on March 28, 2025, as confirmed by MCM's own internal processing stamp 'MCM 3' on the certified mail envelope produced in discovery. MCM never responded to the debt validation demand. No response letter exists anywhere in the discovery record. MCM's continued collection activity including credit reporting after March 28, 2025, without validating the debt, violates 15 U.S.C. § 1692g.

**Additional Fact 2 —MCM's Call Log Shows Calls Beginning April 2022, Not April 2024:** MCM's own call log produced as Exhibit 3-4 to the Sandra Ross Declaration shows calls to Plaintiff's account beginning April 27, 2022 approximately two years before the April 1, 2024

period disclosed in Defendants' MSJ. Defendants' selective presentation of only the 2024 call period to this Court misrepresents the full scope and duration of their calling conduct.

**Additional Fact 3 — Defendants Acknowledge the Call Log Existed But Misrepresent It in Their Memorandum:** Defendants' own DSMF at paragraphs 34 and 35 acknowledges that Plaintiff's documentation for the calls was her call log attached to her Motion to Compel. Yet Defendants' Memorandum simultaneously states Plaintiff 'did not produce any of her call records in discovery.' This internal contradiction is a material misrepresentation to this Court.

**Additional Fact 4 — Nine Documented Regulation F Prong 2 Violations:** Plaintiff's call log documents calls on May 3, May 5 (twice), May 7, and May 9 (three times) all within seven consecutive calendar days after a conversation on May 2, 2024 and calls on May 15, May 17, and May 19 all within seven consecutive calendar days after a conversation on May 13, 2024. These are at least nine presumptive violations of 12 C.F.R. § 1006.14(b)(2)(ii) that Defendants never address in their Motion.

**Additional Fact 5 — Plaintiff Was Deposed One Day Before Discovery Closed Without Critical Documents:** Plaintiff was deposed on March 30, 2026 one day before the March 31, 2026 fact discovery deadline without counsel, without having obtained the Master Purchase Agreement, and before her Motion to Compel was even heard on April 10, 2026. She never had the opportunity to depose any MCM witness, including Sandra Ross, whose 25-page affidavit forms the factual backbone of Defendants' MSJ.

**Additional Fact 6 — MCM's $15 Million CFPB Settlement Undermines the Sandra Ross Autodialer Denial:** MCM previously paid $15 million to settle a class action lawsuit specifically alleging it used autodialers for debt collection calls. This settlement history directly

undermines the credibility of MCM employee Sandra Ross's self-serving affidavit assertion that MCM does not use equipment with a random or sequential number generator.

**Additional Fact 7 — Midland Funding Is the Legal Owner of Plaintiff's Alleged Account:** Midland Funding, LLC is the entity that legally holds title to the purchased debt portfolios including Plaintiff's alleged account. MCM services those accounts as MF's agent. Every unlawful collection act committed by MCM was committed on behalf of MF as the legal account owner. The CFPB named MF as a co-defendant in both its 2015 Consent Order and 2020 enforcement action, recognizing MF's direct participation in the enterprise's unlawful conduct.

Respectfully submitted,

Brendalyn King
Brendalyn King, Plaintiff, Pro Se
22411 Butterfield Road, Apt. 103
Richton Park, IL 60471
fsboninety@yahoo.com

Date: June 04, 2026

**CERTIFICATE OF SERVICE**

I, Brendalyn J. King, certify that on the date indicated below, I caused a copy of the foregoing Plaintiff's Local Rule 56.1(b)(2) Response to Defendants' Statement of Undisputed

Material Facts to be served upon counsel for Defendants via the Court's electronic filing system and/or First Class U.S. Mail:

Louis J. Manetti, Jr.
louis.manetti@troutman.com
Nicholas D. O'Conner
Nicholas.oconnor@troutman.com
Troutman Pepper Locke LLP
111 South Wacker Drive
Chicago, IL 60606

Date: June 04, 2026

Brendalyn King

Brendalyn J. King, Plaintiff Pro Se