**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRENDALYN KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 3293** |
| | ) | |
| **MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Brendalyn King filed a *pro se* lawsuit against Midland Credit Management, Inc. (MCM), Midland Funding, LLC (MF), and Encore Capital Group, Inc. (Encore) under: (1) the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692d; (2) the Illinois Collection Agency Act (ICAA), 205 Ill. Comp. Stat. 740/9.2; (3) the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b; (4) the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii); (5) common law invasion of privacy; and (6) the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/2. The defendants have moved for summary judgment on all of King's claims. Additionally, defendants separately requested summary judgment in favor of Encore and MF on the basis that they are improperly named as defendants. For the reasons stated below, the Court grants the defendants' motion for summary judgment regarding Encore and MF and King's claims under the FCRA, TCPA, common law invasion of

privacy, and ICFA. The Court denies the defendants' motion for summary judgment on King's FDCPA § 1692d and ICAA claims.

**Background**

King's lawsuit involves a Macy's retail credit card account that originated between her and National Department Stores Bank. MCM, a collection agency, allegedly purchased this account in June 2021. King alleges that MCM, Encore and MF are affiliated companies, with MF acting as a debt purchasing affiliate and Encore as the parent of both MCM and MF. King alleges that in attempting to collect this alleged debt, the defendants made twenty-three "repeated, unsolicited calls to her personal cellphone . . . regarding a debt she does not owe" over the course of approximately two months. Am. Compl. ¶ 16. King sent a letter to MCM disputing its ownership of her account and refused to pay the alleged debt. King also alleges that the defendants accessed her credit report without any permissible purpose. All of this, King alleges, "caused [her] emotional distress, reputational harm, and economic injury" in the form of $9.80 in mailing costs and disruption to her childcare responsibilities to her infant grandson. *Id.* ¶ 22.

The defendants filed a motion to dismiss for lack of Article III standing and for failure to state a claim upon which relief can be granted. The following claims by King survived defendants' motion to dismiss:

- FDCPA claim (Count 1) to the extent it is based on allegedly harassing and deceptive collection calls;
- ICAA claim (Count 2) to the extent it is based on allegedly harassing and deceptive collection calls;

- FCRA claim (Count 3) to the extent it is based on impermissible accessing of King's credit report;
- TCPA claim (Count 4);
- Common law invasion of privacy claim (Count 5); and
- ICFA claim (Count 11) to the extent based on unsolicited calls to King and improper accessing of her credit report.

Defendants have renewed their Article III standing contentions in their motion for summary judgment and have moved for summary judgment on all of King's remaining claims. Defendants separately request summary judgment for Encore and MF on the basis that they are improperly named as defendants.

**Discussion**

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party seeking summary judgment has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson,* 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(e)(2) (requiring opposing party to "set out specific facts"). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings but is instead required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11 (1986).

**A. Encore and MF as defendants**

The defendants challenge that Encore and MF are not proper defendants in their motion for summary judgment.

**1. Direct participant liability**

Generally a parent or affiliated entity is not liable for the statutory violations of its subsidiary or affiliate simply by virtue of ownership or control. *Mesenbring v. Rollins, Inc.*, 105 F.4th 981, 984 (7th Cir. 2024) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). The Illinois Supreme Court has adopted a narrow exception to this general principle of limited liability known as direct participant liability. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 290, 864 N.E.2d 227, 237 (2007). Under that theory, a parent company may be held liable for the acts of its subsidiary if it "specifically directs an activity . . . where injury is foreseeable." *Forsythe*, 224 Ill. 2d at 290, 864 N.E.2d at 237. Stated differently, to prevail, a plaintiff must show: (1) "a parent's specific direction or authorization of the manner in which an activity is undertaken," and (2) "foreseeability" of injury. *Id.* Regarding the first element, the parent is liable only if it "surpass[es] the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary." *Id*. Regarding the second element, the parent is liable only "for foreseeable

injuries." *Id.* The Seventh Circuit has confirmed that, as a matter of Illinois law, this principle of direct participant liability applies to torts and statutory violations. *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) ("Illinois courts have applied this theory of direct participation to torts or violations of statutes").

Neither Encore nor MF may appropriately be held liable for MCM's acts. King has produced no evidence that would permit a reasonable jury to find that either Encore or MF exercised "specific direction[,] . . . authorization," or control over MCM's manner or method of calling King, as would be required to impose liability upon them. *Forsythe*, 224 Ill. 2d at 290, 864 N.E.2d at 237. Defendants provided evidence via affidavit that neither Encore nor MF direct, authorize, or control the manner in which MCM's account servicing activities are undertaken. Defs.' Rule 56.1(a)(2) Stmt., Ex. 3 at 3. The same affidavit also provides evidence that MCM alone purchased the relevant credit card account, received King's account information, and sought to collect this debt by calling King. *Id.* at 2–3. King has offered no contrary evidence. To put it simply, MCM—not Encore or MF—is responsible for the collection of King's account and the calls.

In addition, King herself testified that she had no direct contact with either Encore or MF and confirmed that her claims against these defendants are solely based on their "corporate relationships" with MCM. Defs.' Rule 56.1(a)(2) Stmt., Ex. 1 at 68–70. This evidence contrasts with the *Warner v. Midland Credit Management, Inc.*, 540 F. Supp. 3d 946 (C.D. Cal. 2021), which King cites in her opposition to defendants' motion. In *Warner*, the plaintiff alleged that MF took certain direct actions with respect to the debt, including levying against a bank account, whereas in this case there are no similar direct contacts or allegations that would support claims against either Encore or MF. *Id.*

at 958. King's bare assertions that Encore is the parent and that MF funds the project by purchasing and holding legal title to debt portfolios, even if they had evidentiary backing in the record, are insufficient to impose liability upon either of them.

**2. Alter ego theory**

A parent company can also be held liable under an alter ego theory, which imposes independent liability on the parent for its own conduct in directing or authorizing the subsidiary's wrongful acts. *See Van Dorn Co. v. Future-Chem. & Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir. 1985). The parent's corporate entity is disregarded, and the veil of limited liability is pierced, when two requirements are met: (1) there must be such "unity of interest and ownership that the separate personalities of the corporation" and its subsidiary "no longer exist"; and (2) "circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id.* To determine unity of interest, Illinois courts examine four factors: "(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another as its own." *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 866 (N.D. Ill. 1998); *see Van Dorn Co.*, 753 F.2d at 570.

In this case, neither MF nor Encore may be held liable under an alter ego theory. There is no evidence in the record that MCM and Encore or MF have "unity of interest" and ownership such that they no longer have separate personalities, much less that the separate corporate existence of Encore or MF would "sanction a fraud or promote injustice." *Van Dorn Co.*, 753 F.2d at 569–70. No evidence shows, for example, a

failure to maintain adequate corporate records or compliance with corporate formalities, any commingling of funds or assets, undercapitalization, or Encore or MF treating MCM assets as their own. Accordingly, Encore and MF may not be held liable under an alter ego theory. *See Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 979–80 (7th Cir. 1998) (rejecting joint liability across affiliated corporations because the plaintiff failed to present any evidence to "justify the unusual remedy of piercing the corporate veil").

For these reasons, Encore and MF are entitled to summary judgment on all of King's claims.

**B. Standing**

The defendants revive their challenge of King's standing in their motion for summary judgment. To satisfy the minimum constitutional requirements for standing, King must establish that she suffered an injury in fact, the injury must be “fairly traceable to the challenged action of the defendant,” and “it must be likely that the injury will be redressed by a favorable decision.” *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "A concrete injury must be *de facto*, that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). A "bare procedural violation," absent any concrete harm, is insufficient. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 666 (7th Cir. 2021); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021). To qualify as a concrete injury, an intangible harm, like intrusion upon seclusion, must bear a "close relationship" to harms traditionally recognized at common law. *TransUnion LLC*, 594 U.S. at 425. Congress's decision to create a statutory cause of action may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously

inadequate in law." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) (quoting *Lujan*, 504 U.S. at 578).

Standing must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. The Court concludes that King has provided adequate evidence in the record to show standing with respect to her claims that arise from MCM's alleged repeated and unconsented calls to her cellular phone. King's claims involve injuries within the categories that the law recognizes as concrete, as they involve intrusion upon seclusion, an injury traditionally recognized as providing a basis for a lawsuit in a U.S. court. *See, e.g., Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 n.1 (7th Cir. 2020). The record contains evidence via King's deposition testimony about twenty-three calls by MCM and the impact of these calls, including disrupting childcare for her infant grandson. The record also contains call logs that provide further evidence of these calls.

In addition, King provided evidence of $9.80 in mailing costs for her cease-and-desist letter, a classic concrete financial injury. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) (“a loss of even a small amount of money” is ordinarily a concrete injury for purposes of Article III). For these reasons, King has provided sufficient evidence to establish standing to pursue her FDCPA, ICAA, FCRA, TCPA, common law invasion of privacy, and ICFA claims to the extent they involve unsolicited calls made to her. The Court therefore denies defendants' motion for summary judgment on the issue of standing.

## C. FDCPA

King's FDCPA claim survived the defendants' motion to dismiss only to the extent that it was based on "allegedly harassing and deceptive collection calls." Order on Defs. Mot. to Dismiss at 8–9. Defendants contend in their motion for summary judgment that King has failed to show that the debt is a consumer debt, that she has not shown that there is a genuine dispute over whether MCM's calls were harassing under the FDCPA, and that MCM made no calls after King's written cease and desist. The Court addresses each of these points in turn.[1]

### 1. "Consumer debt"

Congress established the FDCPA to deter debt collectors from engaging in abusive, deceptive, disruptive and unfair debt collection practices. 15 U.S.C. § 1692(a)–(e); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 79–80 (2017). Application of the FDCPA requires the plaintiff to be a consumer who owes a debt that qualifies under the applicable definitions set forth in the statute. *See generally* 15 U.S.C. § 1692a. In particular, a debt covered by the FDCPA is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction. . . primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5).

Defendants argue that King has not shown that the debt was a consumer debt. Because King denies the debt was hers in the first place, this is a bit of a Catch-22 argument. The Court concludes that there is sufficient evidence that the credit card

---

[1] King's opposition brief includes arguments concerning her March 2025 debt validation letter and MCM's subsequent lack of response under FDCPA § 1692g and the alleged violation of § 1692e(8) due to MCM reporting a disputed debt without noting the dispute. These claims were all dismissed at the motion to dismiss stage, so the Court does not discuss them further here. Order on Defs.' Mot. to Dismiss at 8–9.

debt, which originates from a Macy's department store, arises out of transactions "primarily for personal, family, or household purposes." *Id.* King testified during her deposition that the account in dispute was from a department store credit card. Other courts in this circuit have found similar sworn testimony about a department store account to be sufficient evidence to satisfy this element at summary judgment. *See, e.g., Torres v. LVNV Funding, LLC*, No. 16 C 6665, 2018 WL 1508535, at *3 (N.D. Ill. Mar. 27, 2018) ("A plaintiff's personal knowledge of how she used the [credit card], as established in deposition testimony and a sworn declaration, is 'competent evidence' that the transactions are for personal, family, or household purposes."). And even though King denies the debt was actually hers, the fact that it was generated at a department store known to sell consumer goods is enough to clear the hurdle.

**2. "Harassing" calls**

Defendants contend that no reasonable jury could find that MCM's calls were harassing or deceptive. Section 1692d of the FDCPA provides that "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d also lists specific conduct that is prohibited, including "[c]ausing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(5).

Calls are presumptively inconvenient and can reflect the required intent when made outside the established "convenient" hours of 8:00 AM through 9:00 PM local time, or when a call occurs within seven consecutive calendar days after a debt

collector had a telephone conversation with a debtor. 15 U.S.C. § 1692c(a)(1); 12 C.F.R. § 1006.14. The requisite showing of intent can also be made through the volume and pattern of calls. *See Bassett v. I.C. System, Inc.,* 715 F.Supp.2d 803, 810 (N.D. Ill. 2010) (finding thirty-one calls over a twelve-day period is sufficient to raise an issue for trial). There is no "bright line rule for how many calls are sufficient to support an inference of intent to harass, oppress or abuse." *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1082 (7th Cir. 2021). The question of whether a particular volume and pattern of calls is indicative of an intent to harass is typically a question for the finder of fact. *Losch v. Advanced Call Ctr. Techs., LLC*, No. 15 C 6644, 2017 WL 1344524, at *3 (N.D. Ill. Apr. 12, 2017).

Via her deposition testimony, King has offered sufficient facts to defeat the defendants' request for summary judgment on this basis. It is undisputed that MCM made twenty-three telephone calls to King over approximately a two-month period. Additionally, the call logs produced by King show a phone call made outside the presumptively convenient hours on May 2, 2024 at 11:13 PM. 15 U.S.C. § 1692c(a)(1). And in her sworn deposition testimony, King described seven calls within seven days of the May 2, 2024 conversation with an MCM collector and three calls within seven days of the May 13, 2024 conversation with an MCM collector. The call logs produced by King document these calls that occurred within seven days of a conversation between King and MCM. A reasonable jury could conclude that MCM's practices, at some point or points during those two months, crossed the line from "a legitimate persistent effort to reach the plaintiff," *Losch v. Advanced Call Ctr. Techs., LLC*, No. 15 C 6644, 2017 WL 1344524, at *3 (N.D. Ill. Apr. 12, 2017) (citing *Carman v. CBE Grp.*, 782 F.Supp.2d

1223, 1231 (D. Kan. 2011)), to an unlawful effort to "annoy, abuse, or harass" her. 15 U.S.C. § 1692d(5). For these reasons, defendants are not entitled to summary judgment on the issue of whether the calls were harassing.

**3. Alleged calls after King's written refusal to pay the debt**

King contends that defendants violated § 1692c(c) by continually contacting her after she sent her November 2024 cease and desist letter. The undisputed facts, however, show that MCM's calls to King ceased months before MCM received King's letter asking it to cease collection. Under the FDCPA, if a consumer notifies a debt collector in writing that she refuses to pay a debt or wishes that the debt collector cease further communication, the debt collector may not communicate further with the consumer, with limited exceptions. 15 U.S.C. § 1692c(c). Both parties' call records show that the final call between MCM and King was on June 6, 2024. King sent her letter disputing the debt and refusing to pay the account on November 21, 2024, five months after that last call. And King testified during her deposition that the November 21, 2024 letter was her first written communication with MCM. For these reasons, the defendants are entitled to summary judgment on King's § 1692c(c) claim to the extent it is based on purported calls by MCM after her written letter asking it to cease collection.

**4. Willful violation**

King argues in her opposition to the defendants' motion for summary judgment that MCM's violation of the FDCPA and the FCRA are willful. King cites no admissible evidence that the defendants willfully violated the FDCPA, FCRA or any other provision. She relies solely on a prior settlement with the Consumer Fraud Protection Bureau. *CFPB v. Encore Capital Group*, No. 20-cv-1750-GPC-KSC (S.D. Cal. Oct. 16, 2020)

(unpublished), Dkt. No. 10. King offers no authority, however, to support the proposition that an earlier settlement with a government agency is sufficient to show that the defendants acted willfully in her specific situation. Her argument for willfulness is therefore unavailing.

In sum, this Court grants defendants' motion for summary judgment regarding King's § 1692c(c) claim but denies defendants' motion for summary judgment regarding her § 1692d claim, except to the extent that King is alleging willfulness on the latter claim.

**D. "Harassing" or "deceptive" calls under the ICAA**

The defendants argue in their motion for summary judgment that no reasonable jury could find that the calls by MCM to King were harassing or deceptive within the meaning of the ICAA. The ICAA bars a collection agency from communicating with a debtor in connection with the collection of any debt "[a]t any unusual time, place or manner that is known or should be known to be inconvenient to the debtor" without prior consent from the debtor. 205 Ill. Comp. Stat. 740/9.2. Communications outside of the time window of 8:00 AM to 9:00 PM are presumed to be inconvenient. *Id.*

As discussed in connection with King's parallel FDCPA claim, the call log evidence (both the handwritten log and screenshots provided by King) shows a phone call made outside the presumptively convenient hours, specifically on May 2, 2024 at 11:13 PM. For this reason, MCM is not entitled to summary judgment on King's ICAA claim.

**E. MCM's ownership of King's account under FCRA**

In her FCRA claim, King alleges that MCM accessed her credit report without a

permissible purpose. The defendants contend that the evidence establishes that MCM owns King's account and therefore that it had a permissible purpose under 15 U.S.C. § 1681b to access her credit report. The Court does not address King's arguments regarding MCM's need to conduct a reasonable investigation under § 1681s-2(b), because only King's § 1681b(f) claim survived defendants' motion to dismiss. *See* Order on Defs.' Mot. to Dismiss at 8–9.

The FCRA imposes civil liability upon anyone who willfully or negligently obtains a consumer's credit report for a purpose not authorized under the statute. 15 U.S.C. §§ 1681b(f), 1681n(a), 1681o(a). It is a "complete defense to a claim under Section 1681b" if a party has a "permissible purpose" for obtaining a consumer's credit report. *Stewart v. Credit Control, LLC*, No. 18 C 3916, 2020 WL 2307441, at *2 (N.D. Ill. May 8, 2020) (citing *Betz v. Jefferson Cap. Sys., LLC*, 68 F. Supp. 3d 130, 133 (D.D.C. 2014)). In particular, a person or entity may permissibly obtain a consumer's credit report if it "intends to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit to[ ] or review or collection of an account[ ] of the consumer." 15 U.S.C. § 1681b(a)(3)(A). A debt collector's attempt to collect a debt it owns is a permissible purpose under this provision. *See Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x 40, 43 (7th Cir. 2009) (obtaining a credit report on behalf of an owner of a debt is a permissible purpose under the FCRA); *Stewart*, 2020 WL 2307441, at *2 ("review or collection of an account" includes "a debt collector's attempt to collect a debt").

The evidence in this case establishes that MCM owned King's account at the relevant time; no reasonable fact finder could find otherwise. Thus it is not genuinely

disputed that MCM had a permissible purpose for obtaining King's credit report. MCM offers evidence that King's account was part of a portfolio of accounts originated by National Department Stores Bank that MCM acquired in June 2021. MCM also offers evidence that it acquired ownership over King's account in particular, including the card agreement for King's account, King's name, social security number, date of birth, and address. King testified during her deposition that the account existed, that it was in her name, and was not the result of identity theft. King disputes MCM's ownership of her account on the basis that the bill of sale only identifies the transferred accounts as a bulk lot, not by reference to her individual account. But that is not enough to give rise to a genuine factual dispute. MCM has established that it owns King's account; no reasonable jury could find otherwise.

Because MCM engaged in collection activity in connection with King's account that they owned, it had a permissible purpose to access her credit report. The defendants are therefore entitled to summary judgment on King's FCRA claim.

**F. "Autodialer" under the TCPA**

The defendants argue in their motion for summary judgment that there is no evidence in the record that MCM used an autodialer. The TCPA prohibits

> any person within the United States . . . [from] mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called) *using any automatic telephone dialing system* . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA defines an "automated telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number

generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

King has not shown the existence of a genuine factual dispute over whether MCM used an "automated telephone dialing system." *Id.* The only evidence that King produced concerning MCM's use of an autodialer is her own deposition testimony that when she answered calls from MCM, there was a "delay" before someone started speaking. Defs.' Rule 56.1(a)(2) Stmt., Ex. 1 at 67. That is not enough, without more, to permit a reasonable fact finder to find that MCM was using an autodialer.

The evidence MCM cited reflects that it does not use equipment that either randomly or sequentially generates numbers for dialing. King argues that this evidence, contained in Sandra Ross's affidavit, should be discredited as self-serving. But most affidavits are inherently "self-serving, as is most testimony." *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). This does not authorize a court to disregard otherwise admissible evidence when deciding whether a material factual dispute requires a trial. *See also Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) ("[w]e have repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge").

For these reasons, defendants are entitled to summary judgment on King's TCPA claim.

**G. Intrusion upon seclusion**

King asserts a claim for invasion of privacy arising from MCM's calls. Illinois recognizes intrusion upon seclusion as an intentional privacy tort. *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 35, 983 N.E.2d 414, 425. To sustain a claim, the plaintiff must show (1) there was an unauthorized intrusion upon seclusion; (2) the

intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiff anguish and suffering. *Spiegel v. McClintic*, 916 F.3d 611, 618–19 (7th Cir. 2019) (quoting *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71, 813 N.E.2d 1013, 1017 (2004)). The defendants argue that King cannot establish that the calls MCM made to her were highly offensive to a reasonable person or that they caused her anguish and suffering.

**1. "Highly offensive to a reasonable person"**

As discussed earlier, unauthorized telephone calls can give rise to an intrusion upon seclusion claim under IL law. *See Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1033, 714 N.E.2d (Ill.1999); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023) (citing *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417, 534 N.E.2d 987, 989 (1989)). The "nature of this tort depends upon some type of highly offensive prying into the physical boundaries or affairs of another person." *Lovgren*, 126 Ill. 2d at 416–17, 534 N.E.2d at 989.

King has shown that there is a genuine factual dispute over whether MCM's phone calls were "highly offensive to a reasonable person." It is undisputed that MCM called King twenty-three times from April 1, 2024 through June 6, 2024. Although King does not offer evidence that there was anything about the content of any the calls that would make them "highly offensive to a reasonable person," call logs produced by King note a call made after 11:00 PM on May 2, 2024, a call not within regular business hours. *Cf. Arora v. Midland Credit Mgmt. Inc.*, No 24-2288, 2025 WL 301701, at *3 (7th Cir. Jan. 27, 2025) (holding that the district court did not clearly err in concluding that

calls made "during regular business hours with a good-faith belief that the telephone number belonged to [the debtor]" would not be highly offensive to a reasonable person). The presence of a call at 11:13 PM is a materially significant factor that distinguishes this case from *Arora*, where the absence of late-hour calls weighed heavily against the plaintiff. *Id.*, 2025 WL 301701, at *3. Further, as stated earlier, this call directly implicates the FDCPA, which presumes that calls placed after 9:00 PM are at an inconvenient time. 15 U.S.C. § 1692c(a)(1). Though the FDCPA standard does not govern the Illinois tort claim directly, it informs what a reasonable person would find objectionable. Keeping in mind that the Court must, at this point, view the evidence in the light most favorable to King, the defendants are not entitled to summary judgment on this basis, because a reasonable jury could find, at least, that this particular call was "highly offensive to a reasonable person."

**2. "Anguish and suffering"**

Defendants also contend that King cannot establish that MCM's actions caused her "anguish and suffering" as required for liability. To establish this element, "the plaintiff must prove actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation and integrity in the community. Injury is not presumed." *Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1009 (N.D. Ill. 2016) (cleaned up). Claims of "distress" are insufficient, *id.* at 1008, as are statements of anger, humiliation, frustration, or embarrassment. *Id.*; *see also Schmidt v. Ameritech Ill.*, 768 N.E.2d 303, 315–17, 320 Ill. App. 3d 1020, 1034–37 (2002); *Stafford v. Puro*, 63 F.3d 1436, 1445 (7th Cir. 1995). When "the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in

reasonable detail; he cannot rely on mere conclusory statements." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003*); see also Ruffin–Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005). Further, "a causal relationship between plaintiff's anguish and defendant's alleged intrusion must be established." *Schmidt*, 768 N.E.2d at 317, 320 Ill. App. 3d at 1036.

King failed to provide evidence from which a reasonable jury could find that she suffered "anguish and suffering." Her only evidence supporting this consists of her generic declarations that the situation caused her "anxiety," "[n]ervousness," "[f]rustration and emotional upset," "distress," and "concern." *See* Defs.' Rule 56.1(a)(2) Stmt., Ex. 1 at 71–73. King has offered no evidence of medical or psychiatric treatment arising from these injuries, despite having claimed in her November 2024 letter to MCM that she suffered elevated blood pressure. Defs.' Rule 56.1(a)(2) Stmt., Ex. 5 at 2. These amount to conclusory and unsupported contentions that do not give rise to a genuine factual dispute. In addition, King has offered no evidence whatsoever supporting a claim of causation. The Court concludes for these reasons that defendants are entitled to summary judgment on King's intrusion upon seclusion claim.

### H. "Deceptive" or "unfair" act under the ICFA

The defendants argue that King has failed to offer evidence that would permit a finding that MCM engaged in an "unfair or deceptive" practice within the meaning of the ICFA. To sustain a claim under the ICFA, the plaintiff must show: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant’s intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred in a course of conduct involving trade or commerce; and (4) the unfair or deceptive practice caused

plaintiff actual pecuniary harm. *See Whittler v. Midland Funding, LLC*, No. 14 C 9423, 2015 WL 3407324, at *4 (N.D. Ill. May 27, 2015); *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933, 791 N.E.2d 553, 558 (2003) (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996)); *see also* 815 Ill. Comp. Stat. 505/2. A complaint asserting a claim of deception under the ICFA "must be pled with the same specificity as that required under common law fraud," namely, by clear and convincing evidence. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (quoting *Elson v. State Farm Fire & Cas. Co.*, 295 Ill. App. 3d 1, 14, 691 N.E.2d 807, 816 (1998)). When analyzing a claim under the ICFA, the "allegedly deceptive act must be looked upon in light of the totality of information made available to the plaintiff." *Davis*, 396 F.3d at 884.

In this case, King's argument about MCM's allegedly improper accessing of her credit report fails because the evidence establishes that MCM owned King's account at the relevant time. As the owner of King's account, MCM therefore had a permissible purpose to access her credit report. It is in no way unfair or deceptive on the part of a debt collector to access a credit report on a debt it owns; the FDCPA, specifically 15 U.S.C. § 1681b(a)(3), expressly permits this when the entity accessing the report intends to use the information in connection with the collection of an account, as was the case here. *See Miller*, 309 F. App'x at 43 (obtaining a credit report on behalf of an owner of a debt is a permissible purpose under the FCRA); *Stewart*, 2020 WL 2307441, at *2 ("review or collection of an account" includes "a debt collector's attempt to collect a debt"). Accordingly, no reasonable jury could find that MCM committed an unfair or deceptive practice by accessing King's credit report.

Further, no reasonable jury could find that MCM's calls to King were deceptive or unfair within the meaning of the ICFA. Among other things, King conceded during her deposition that the calls as a whole were not deceptive. *See* Defs.' Rule 56.1(a)(2) Stmt., Ex. 1 at 50. MCM contacted King by mail stating that her account had been transferred to MCM from National Department Stores Bank, and that MCM was the owner of the debt. This letter provided notice that MCM owned the account, and it provided King with a phone number from which MCM would call regarding the debt. It was not deceptive or unfair for MCM to seek to collect a debt it owned from the number it told her it would call from; no reasonable jury could find otherwise. In addition, MCM at no time misrepresented its right to bring a collection action against King. In sum, there is no genuine factual dispute over whether MCM's calls were deceptive or unfair. The defendants are therefore entitled to summary judgment on King's ICFA claim.

## I. King's 56(d) argument that summary judgment is premature

In her opposition to defendants' motion for summary judgment, King requested a continuance to conduct additional discovery. Federal Rule of Civil Procedure 56(d) provides that, if a party opposing a summary judgment motion has demonstrated that it is unable to "present by affidavit facts essential to justify [its] opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(d); *see, e.g., MAO-MSO Recovery II, LLC v. State Farm Mut. Auto Ins. Co.*, 994 F.3d 869, 877 (7th Cir. 2021). King argues that she was denied discovery of the Master Purchase Agreement, complete dialer call detail records and native dialer system records that show how calls to her number were generated, a

recording index that identifies each audio recording and the metadata of the call, documentation regarding the defendants' telephone dialing equipment, and the opportunity to depose Sandra Ross or "any MCM witness." Pl.'s Opp. to Defs.' Mot. for Summ. Judg. at 5.

The justification for a continuance of a motion for summary judgment proceeding "must be genuine and convincing to the court rather than merely colorable." *Pfeil v. Rogers*, 757 F.2d 850, 856–57 (7th Cir. 1985). In *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869 (7th Cir. 2006), the court overruled the plaintiffs' request for time to pursue additional discovery because they had had "ample time (a total of 74 days of open discovery) to attempt to secure their testimony as well as approach the trial court and demand compliance to their discovery request if needed." *Id.* at 886. As in *Davis*, King had ample time prior to the discovery cutoff date to secure documents and testimony and seek compliance with her discovery requests if needed. Discovery opened on November 28, 2025 and concluded on March 31, 2026, a period of about four months. King first asserted her request under Rule 56(d) three months after discovery had closed. Her argument for a continuance is not persuasive. As such, this Court denies King's Rule 56(d) request.

**Conclusion**

For the reasons stated above, the Court grants defendants' motion for summary judgment [dkt. 57] as to defendants Encore and MF on all of King's claims and as to all defendants on King's claims under the FCRA, TCPA, common law invasion of privacy, and ICFA. The Court otherwise denies defendants' motion. The only surviving claims are King's FDCPA § 1692d claim and her ICAA claim to the extent they are based on

allegedly harassing calls. A telephonic status hearing is set for September 23, 2023 at 9:00 a.m. to discuss a schedule for further proceedings and the possibility of a settlement conference. The following call-in number will be used: 650-479-3207, access code 2305-915-8729.

MATTHEW F. KENNELLY
United States District Judge

Date: September 15, 2026